UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

BRANDON M. ASKEW                                                                               PLAINTIFF
ADC #128557

V.                              No. 2:23-CV-99-BSM-JTR

DOES                                                                                          DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.   Introduction

On April 14, 2023, Plaintiff Brandon Askew ("Askew"), an inmate in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 action alleging that his constitutional rights have

been violated. *Doc. 2*. Before Askew may proceed with his case, however, the Court must first screen his claims.[1]

## II. Discussion

Askew alleges that EARU correctional officers are conspiring to murder him by: (1) feeding him "micro-Bio chips" that can monitor his thoughts, control his heart rate, and "trigger gene mutations" (*Doc. 2 at 7, 11–12*); and (2) spreading rumors that he is a "child molester, baby rapist, rapist, woman beater, homosexual," and "snitch" (*Doc. 2 at 5, 9*). He also alleges that several officers have threatened him, and, on December 31, 2022, several inmates sexually harassed him. *Doc. 2 at 13, 22*. Askew seeks to bring claims under the Eighth Amendment, Fourteenth Amendment, Racketeer Influenced and Corrupt Organizations ("RICO") Act, and Prison Rape Elimination Act ("PREA"). For relief, he seeks $5 million in compensatory damages, $5 million in punitive damages, and an "emergency transfer" from EARU or release into "Wit-Sec." *Doc. 2 at 4*.

---

[1]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints, and to dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) & (b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

**A. Askew's Microchip Claims**

The bulk of Askew's Complaint revolves around allegations that "each correction official"[2] has conspired to "bug" his body with microchips by hiding them in his food and drink. Facially, Askew's microchip claim is far-fetched and fanciful. Accordingly, it is recommended that the claim be dismissed, as frivolous. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (a court may dismiss a claim as frivolous if the allegations are "fanciful," "fantastic," or "delusional") (citations omitted); *see e.g., Hussein v. Barr*, No. 19-3083, 2020 WL 1492027, at *1 (8th Cir. Jan. 21, 2020) (summarily affirming dismissal of claim that government officials implanted microchips chips into plaintiff's body, as frivolous); *Sikora v. Houston*, 162 F.3d 1165 (8th Cir. 1998) (unpublished opinion) (affirming dismissal of complaint, as frivolous, where plaintiff alleged that prison officials used "electro staticmagnetic pressure field devices" to destroy his "mind, confidence, and spirit").

**B. Askew's Failure-to-Protect Claim Against Defendants for Spreading "Misinformation" About Him**

Askew believes that corrections officials are "conspiring together with convicted criminals to injure, oppress, threaten and intimidate" him. *Doc. 2 at 9*. He claims that the "corrections officials have even went so far as to fabricate []

---

[2] On the form § 1983 Complaint, Askew does not name any Defendants where directed to do so. *Doc. 2 at 1*. Instead, he states that he "will amend and send in more names." *Id.* He does, however, occasionally list the names of correctional officers in the narrative of his Complaint. *See Doc. 2 at 13–15*.

3

misinformation about [him] being a child molester, baby rapist, rapist, woman beater, homosexual, etc." and labeled him "a snitch, hoping that [he] would be killed." *Id.* at 5, 9.

The majority of Askew's allegations are so vague and conclusory that it is impossible to understand how "each correction[] official" was personally involved in spreading misinformation about him. However, Askew makes a *single* specific allegation against "Corrections Officer Parker" that bears further review. The full extent of Askew's allegations against Corrections Officer Parker is as follows:

> Corrections Officer Parker revealed participation/involvement [in the conspiracy] after deliberately spreading rumors to inmates that Plaintiff Brandon Askew raped women, sexually assaulted kids, beat women, raped men, was snitch, and that he/she was involved with people whom placed ransom upon Plaintiff's head to get him killed and/or raped by inmates -- or poisoned by food/drinks. See Audio/Visual recordings on 12/09/2023 at approximately 2:30pm – 5:30pm "Listen Closely"

*Doc. 2 at 15*.

Prison officials must take reasonable measures to guarantee the safety of inmates, which includes the duty to "protect prisoners from violence at the hands of other prisoners." *Reeves v. King*, 774 F.3d 430, 432 (8th Cir. 2014). "To prevail on a failure-to-protect claim, an inmate must make two showings: (1) an objective component, that there was a substantial risk of harm to the inmate, and (2) a subjective component, that the prison official was deliberately indifferent to that risk." *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021).

4

Generally, a prison guard who labels an inmate a "snitch" violates the duty to protect, regardless of whether the inmate is subsequently attacked, because "an inmate who is considered a snitch is in danger of being assaulted or killed by other inmates." *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008). However, Askew's allegations fall short of stating a claim because there is no suggestion that Officer Parker's alleged comments caused a substantial risk of harm to Askew.

According to Askew, for approximately three hours on December 9, 2023, Officer Parker "spread rumors to inmates" and was "involved with people who[] placed a ransom on [his] head." Askew is apparently not sure of Officer Parker's gender. He does not provide any details about which inmates, if any, heard Officer Parker's "rumors" and has otherwise failed to provide any facts to suggest he is in danger of being assaulted or killed. Accordingly, Askew's vague and conclusory allegations about being falsely labeled a "rapist" and "snitch" fail to state a claim upon which relief may be granted. *Cf. Williams v. Horner*, 403 F. App'x 138, 139–40 (8th Cir. 2010) (plaintiff sufficiently pled failure-to-protect claim by alleging that a prison guard came to his cell, "yelled" at him for filing grievances, and "proceeded to call [him] a snitch within the hearing of other inmates").

### C. Death Threats from Correctional Officers

Askew alleges that several prison guards have threaten to kill him. Generally, verbal abuse by prison officials, unaccompanied by injury, is insufficient to state a

5

constitutional claim. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). There is an exception, however, when the verbal threats amount to "brutal" and "wanton acts of cruelty." *Id.* When determining whether a death threat rises to the level necessary to implicate the Eighth Amendment, the Court may consider the conduct surrounding the threat and whether the threat is retaliatory, objectively credible, and "fear-inducing." *Id.* at 449–50.

Askew makes three specific allegations of death threats: (1) on December 5, 2022, "Officer Labrinsky or Short" stated "You gone know my name when you die;" (2) on an unspecified date, "Officer Haywood" stated "they gone kill him anyway;" and (3) on an unspecified date, an unidentified officer stated that "he/she will accidently open all maximum security doors to get [Askew] hurt." *Doc. 2 at 13, 15*.

Other than suggesting that these officers are part of the conspiracy to murder him, Askew provides no additional details or context to the threats. Without more, none of these statements rise to the level of being "wanton acts of cruelty" and, accordingly, do not state a constitutional claim.

**D. PREA Claim**

Askew's final decipherable claim rests on his allegation that, on December 31, 2022, "several inmates called [him] a 'dick sucker.'" *Doc. 2 at 22*. He claims that this sexual harassment "falls under the Prison Rape Elimination Act." *Id.* He

spoke to Corrections Officer White and Captain Podillo about the incident, "but no one came to assist [him] in feeling sexually uncomfortable" *Id.*

The PREA authorizes the federal government to give grants to prisons and detention facilities that implement procedures designed to reduce the number of prison rapes. *See* 34 U.S.C. §§ 30301–30309. It does *not* authorize or create a private right of action. *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3rd Cir. 2017) ("Bowens may not attempt to enforce statutes or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim."); *Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015) (finding that PREA does not afford a private right of action); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016); *see also Cox v. Nobles,* 15 F.4th 1350, 1361 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1178 (2022) (alleged violation of the PREA does not, *per se*, state a violation of the Eighth Amendment). Accordingly, Askew may not maintain a cause of action based on the alleged violation of the PREA.

### E. Askew's Motions for Temporary Restraining Orders and Motion for Order

In light of the Court's recommendation that Askew's microchip claim be dismissed as frivolous, and the remaining claims be dismissed for failure to state a claim, the Court further recommends that Askew's Motions for Temporary

Restraining Order (*Doc. 3; Doc. 9*)[3] and Motion for Order (*Doc. 12*)[4] be denied, as moot.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Askew's Complaint be DISMISSED, without prejudice, as frivolous and for failure to state a claim upon which relief may be granted.

2. All pending Motions (*Doc. 3; Doc. 9; Doc. 12*) be DENIED, as moot.

3. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g); *see Gonzalez v. United States*, 23 F.4th 788, 789 (8th Cir.), *cert. denied*, 213 L. Ed. 2d 1065, 142 S. Ct. 2837 (2022).

---

[3] In Askew's first Motion for Temporary Restraining Order, filed at the same time as his Complaint, he requests to be immediately "transferred to safe grounds" because the criminal conspiracy "entity's macrocosmic affiliation exposes [him] to be defenseless." *Doc. 3 at 1*. He also claims that someone is tampering with his mail. *Id.*

In his Amended Motion for Temporary Restraining Order, Askew claims, in part, that: (1) he is "being inspected, unknowingly and without consent, with a 'brain-computer-interface' technology that allows the controlling of his thoughts;" (*Doc. 9 at 2*); (2) "inmates and corrections officials (as one)" have made threats about "mixing food with medicine" (*Id. at 8*); (3) he has been "skipped" over for a shower (*Id. at 8*); and (4) there is continued interference with his mail.

[4] In his Motion for Order, Askew requests "a forensic test" of the "Sweet Baby Ray's BBQ sauce," which he bought from the EARU commissary and "concealed [] for testing. *Doc. 11 at 1–2; Doc. 12*. He believes the barbeque sauces contains "life-threatening chemical toxicants," which will be revealed through forensic testing. *Doc. 11 at 1*.

4.     The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 20th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE